# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs)   **No. 13-0260** (Berkeley County 11-F-205)

**James Cross Jr.**
**Defendant Below, Petitioner**

**FILED**

November 8, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James Cross Jr., by counsel Christopher Prezioso, appeals the December 3, 2012 order of the Circuit Court of Berkeley County sentencing him to a term of incarceration of life with the possibility of parole. Respondent State of West Virginia, by Cheryl Saville, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner James Cross Jr. was indicted along with his co-defendant Thomas A. Grantham in October of 2011, on one count of murder, one count of attempted murder, one count of malicious assault, and one count of conspiracy to commit murder. The basis of this indictment was an incident which occurred on April 23, 2011, wherein petitioner and Grantham were involved in a roadside physical altercation with the alleged victims, Andre Jackson and Jacques Taylor. Three witnesses saw the altercation and the acts leading to the altercation: Sharenna Gonzalez, Sheron Yates, and Shameeka Yates. The three women were at the Brickhouse Bar and Grill when they met with petitioner and Grantham. The women were previously acquainted with petitioner and Grantham. Taylor and Jackson were also at Brickhouse, and both were drinking alcohol heavily. As the bar closed, Taylor and Jackson got into an argument with petitioner in the parking lot. Taylor began to walk away from the argument, then turned around to return, but was physically restrained from attacking petitioner.

Petitioner and Grantham then left the Brickhouse parking lot and drove to a nearby Exxon. However, the three women, Jackson, and Taylor also ended up at the Exxon, where the argument continued. All of them then left the Exxon in three separate vehicles, and proceeded to Polo Greens Townhouses. Grantham, who was driving a vehicle with petitioner inside, turned around at the

1

townhouses and Taylor drove toward him, almost hitting the vehicle containing the women. The testimony as to which car followed the other was conflicting at trial. Petitioner and Grantham then exited their vehicle and began fighting Taylor and Jackson. After the fight, Grantham and petitioner left, with Grantham driving. Although Grantham drove close to Jackson, all witnesses testified that he did not hit him with the vehicle. Grantham and petitioner drove to Cincinnati to the home of Natosha Grantham and were later apprehended there. No weapons were found at the scene, but Taylor suffered a stab wound in the neck and chest, and Jackson died from being stabbed. The murder weapon was never located. The State contends that Taylor and Jackson were stabbed through the windows of their vehicle and never left the vehicle.

Petitioner and Grantham were tried jointly on all counts beginning on June 12, 2012. At the close of the State's case, petitioner moved for judgment of acquittal pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure, which motion was denied. On June 18, 2012, petitioner was found guilty of second degree murder, a lesser included offense of first degree murder; attempted second degree murder (a lesser included offense); and, malicious assault. Petitioner then filed a motion for new trial and a renewed motion for judgment of acquittal after the jury was discharged. These motions were denied.

On August 20, 2012, the State filed a recidivist information seeking to enhance petitioner's sentence for his conviction of malicious assault to a life sentence based on petitioner's conviction on two prior, separate felony offenses. On October 23, 2012, a recidivist trial commenced and the jury found that petitioner was the same person who previously committed two felonies. Following this trial, petitioner filed a motion for new trial and a renewed motion for judgment of acquittal.

Petitioner was sentenced on December 3, 2012, to a sentence of life in prison with the possibility of parole based on his status as a habitual offender pursuant to West Virginia Code § 61-2-9 on the malicious wounding charge. Petitioner was also sentenced to forty years of incarceration on the second degree murder conviction and one to three years of incarceration on the attempted second degree murder conviction. All sentences are to run consecutively.

"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, in part, *State v. McGill,* 230 W.Va. 85, 736 S.E.2d 85 (2012).

On appeal, petitioner first argues that the circuit court abused its discretion in refusing to give his requested jury instructions on "self-defense" and "imperfect self-defense." We have previously held that

> "A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in

2

formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion." Syl. Pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Kendall*, 219 W.Va. 686, 639 S.E.2d 778 (2006). A criminal defendant is entitled to an instruction "for which there exists evidence sufficient for a reasonable jury to find in his/her favor. . . ." Syl. Pt. 2, in part, *State v. McCoy*, 219 W.Va. 130, 632 S.E.2d 70 (2006). The evidence shows there was a heated argument between petitioner and Taylor at the nightclub, but it also shows that petitioner and Grantham followed the victims from Exxon to Polo Greens Townhouses. Petitioner and his codefendant exited their car and attacked Taylor and Jackson, who were sitting in their vehicle. The circuit court fully examined the potential instructions, finding that there is no evidence that petitioner or Grantham withdrew and thus there was no basis for a self-defense instruction. The court specifically noted that "you can't claim self-defense when you had the opportunity to retreat and you go into the affray" and that petitioner and his co-defendant could have just "driven away." Further, there is no evidence Jackson or Taylor had weapons, and it is apparent from the victims' injuries that petitioner and Grantham did have weapons. There is likewise no evidence that petitioner had to use deadly force to defend himself. Petitioner failed to show an abuse of discretion in denying the self-defense instructions.

Next, petitioner argues that the circuit court erred in failing to grant his motions for judgment of acquittal. We have previously held that "[t]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)). To that end, we note the following:

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Malfregeot*, 224 W.Va. 264, 685 S.E.2d 237 (2009). Upon our review, the Court finds no error in the circuit court's denial of petitioner's motion for judgment of acquittal because the evidence was sufficient to support petitioner's conviction on one count of second degree murder, one count of attempted second degree murder, and one count of malicious

assault. Sheron Yates testified that she saw petitioner follow the two victims in the vehicle, and saw petitioner and Grantham exit their vehicle and go to the vehicle of the victims. Sharenna Gonzalez, who was sober, testified that she tried to calm petitioner down after the initial altercation at the Brickhouse. She also saw petitioner and Grantham follow the victims and saw them approach the victims in the vehicle. Shameeka Yates testified to seeing petitioner and his co-defendant attack the victims as they sat in their vehicle. Taylor testified regarding the altercation, stating that he was stabbed as he rolled down his window, while he was sitting in the vehicle. Medical evidence showed that both victims were stabbed, and that the stabbing caused Jackson's death. Forensic evidence confirmed that the victims had been attacked while still sitting inside their vehicle. The evidence was clearly sufficient to support the convictions herein.

Petitioner also argues that the circuit court abused its discretion in denying his motion to suppress evidence of the knives, as the knives were unrelated, unduly prejudicial, and irrelevant. These knives included three specific knives found at a home in Martinsburg and four found in the Cincinnati home where petitioner was found. None of the knives were the murder weapon.

This Court has noted as follows:

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 13, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Moreover,

> By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995). Upon consideration of the above standard of review, this Court finds no error in the circuit court's denial of petitioner's motion to suppress the knives. The possession and use of knives by the co-defendants were material facts of the State's case, making the possession of and access to knives relevant. Petitioner's wallet and identification were found in the Martinsburg home, along with two box cutters hidden in a cigar

4

box and a butcher knife found in the bathroom. The Cincinnati knives were found in a duffle bag, which the State proved through testimony of Natosha Grantham was brought to her home by petitioner and his co-defendant. The court conducted a full analysis under Rule 403 of the West Virginia Rules of Evidence and found that the probative value of the knives outweighed the prejudicial effect. Petitioner failed to prove an abuse of discretion in the denial of the motion to suppress.

Additionally, petitioner argues that the circuit court erred in refusing to grant his motion to sever defendants. Petitioner moved pretrial to sever his case from his co-defendant's case pursuant to Rule 14(b) of the West Virginia Rules of Criminal Procedure, arguing that joinder of the defendants in this case was prejudicial to petitioner, as the strategies of the parties were vastly different. Petitioner chose to argue self-defense, while his co-defendant alleged that he was not even present when the altercation occurred. Rule 14(b) states, in relevant part, "[i]f the joinder of defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the State, the Court may sever the defendants' trials, or provide whatever other relief that justice requires." Petitioner must make an affirmative showing of prejudice in order to justify separate trials, as the preference is for one single trial since the 2006 amendment to Rule 14. The circuit court properly found that the evidence against petitioner and his co-defendant was inextricably intertwined, arose from the same act or transaction, and required the presentation of identical evidence by the State. Even if petitioner could show prejudice, this prejudice was cured by a cautionary instruction given by the circuit court.

Next, petitioner argues that the circuit court abused its discretion in allowing "flight" evidence at trial. This Court has stated:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an in camera hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

Syl. Pt. 7, *Acord v. Hedrick,* 176 W.Va. 154, 342 S.E.2d 120 (1986) (internal citations omitted). In the present case, petitioner argues that the State never proved he had an illicit purpose in going to Natosha Grantham's home. However, the record reflects that the circuit court conducted a full hearing on this issue, finding that the evidence was admissible and that the probative value of the evidence outweighed any prejudicial effect. Grantham's explanation of going to Cincinnati for a birthday party does not explain why petitioner would have been with him and lends credence to the theory that they were attempting to avoid capture. The circuit court properly allowed flight evidence in this case.

Finally, petitioner argues that he should have been sentenced in a single aggregate life sentence with the possibility of parole as a result of petitioner having been found to have twice been previously convicted of two separate felonies in his habitual offender jury trial. Petitioner argues that he should not receive a life sentence and then have his other sentences run consecutive to the life sentence. Petitioner admits that this Court has addressed the issue in *State v. Harris,* 226

5

W.Va. 471, 702 S.E.2d 603 (2010). However, he still argues that a single life sentence with the possibility of parole should be the maximum penalty and that consecutive sentences should be constitutionally impermissible. Alternatively, petitioner argues that the charge with the longest sentence should be the one enhanced. As petitioner notes, this Court has previously addressed this issue in *Harris*, finding that the court could properly enhance one sentence and use its discretion in imposing the statutory sentences for the remaining convictions and ordering those to run consecutively. We decline to overrule sound precedent and find no error in the court's recidivist sentence herein.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 8, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6